# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEPHANIE DAMADIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1503 (RJL) |
| | ) | |
| DIRK KEMPTHORNE, Secretary | ) | |
| DEPARTMENT OF INTERIOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' FIRST SET OF WRITTEN**
**INTERROGATORIES AND REQUEST FOR ADMISSIONS**

Plaintiff Stephanie Damadio, by and through undersigned counsel, hereby serves Defendant with the following Interrogatories and Request for Admissions pursuant to Rules 33 and 36 of the Federal Rules of Civil Procedure:

**Instructions**

The following Interrogatories seek information presently in the possession, custody, control, or knowledge of Defendant and its employees, including information contained in or on any documents as defined below or any other things known or available to the Defendant, its employees, attorneys, investigators, agents, or any other person acting with or on the Defendant's behalf. All responses will be deemed to reflect the knowledge of the Defendant, and all responses to these Interrogatories should indicate the person principally responsible

for providing the information contained in the response.

If Defendant believes any of these Interrogatories are unclear or ambiguous, please provide Plaintiff's counsel with a written request for additional clarification in a prompt and timely manner to assure that Defendant's responses are provided within the allotted time.  Plaintiff will respond to any concern in the form of a Supplemental Discovery Request.

These Interrogatories are continuing in nature and require prompt supplementation or modification should Defendant acquire any additional information relating in any way to the requests after the date of response.  If Defendant lacks any information necessary to answer any of the Interrogatories, describe the specific efforts made by Defendant or anyone on its behalf to ascertain the information, and state when Defendant anticipate obtaining the information.  Any additional information must be furnished to Plaintiff's undersigned counsel promptly after it is acquired.

In answering these Interrogatories, identify persons by their full name, title, office, last known address, and tele-phone number.

If you choose to respond to these Interrogatories by pro-ducing documents pursuant to Rule 33(d) of the Federal Rules of

2

Civil Procedure, and these documents exist in electronic format, then your responses are to be produced in electronic format, along with the record layout and documentation of coded fields (data dictionary), to the extent it exists. All electronic database materials should be transmitted as either comma delimited or fixed length format text files. If the comma delimited file format is chosen, the first record in the file should contain the field names. If the fixed length format is chosen, a separate document should be provided which identifies each field name, type, and length, and, if numeric, the appropriate decimal location. Your response should also be produced in hard-copy on standard 8.5 x 11 inch paper.

If the requested information is known to have existed, but no longer exists or is no longer in Defendant's possession, custody, or control, identify its last known custodian and state the date upon which it was lost or destroyed or otherwise became unavailable.

As to any Interrogatories to which Defendant asserts an objection, please fully describe the grounds for the objection so as to provide the Court and Plaintiff a full and reasonable basis to understand and evaluate such objection. If Defendant intends to withhold any information under a claim of privilege,

identify the type of material being withheld, its general subject matter, the date it was prepared or signed, and additional information as is needed to reference the item without revealing the material claimed as protected, including, where appropriate, the author, addressee, custodian, any other recipients, and the respective relationships of these individuals.

If any information contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without disclosing the privileged material. If any document has been redacted or altered in any fashion, make the redaction or alteration clear, and state the reason for the alteration, indicate the date of the alteration, and identify the person who made the alteration.

If Defendant objects to the production of any information on the ground that production is unduly burdensome, provide Plaintiff's counsel with a written, detailed description of the burden or expense of production in a prompt and timely manner to assure that Plaintiff's responses are provided within the allotted time. Plaintiff will seek to address any concern in the spirit of ABA Civil Discovery Standards 5, 11, and 12.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant's responses to these Interrogatories must be

4

made under oath, must be signed by the person making the response, and must be provided to undersigned counsel within 30 days, i.e., by Tuesday, October 30, 2007. <u>See</u> Fed. R. Civ. P. 33(b)(1)-(3).

**<u>Definitions</u>**

1. <u>Defendant</u>: means Dirk Kempthorne, Secretary, Department of Interior ("DOI"), and his employees, attorneys, representatives, investigators, agents, or any other person acting with or on his behalf.

2. <u>Agency</u>: means the U.S. Department of Interior ("DOI") and each of its divisions and departments, including the Bureau of Land Management ("BLM"), as relevant to the employment of Plaintiff and the discrimination and retaliation claims raised in this action.

3. <u>Department of the Interior ("DOI")</u>: means the U.S. Department of the Interior ("DOI"). Any reference to DOI includes not only those offices that are "departmental" offices but also all of the individual bureaus or agencies, including, but not limited to, any subdivisions or groups of those bureaus or agencies, that make up the Department of Interior.

4. <u>WO 240</u>: means an organizational unit (Office/Group

5

/Division) of the Washington D.C. office of the U.S. Bureau of Land Management that has been called the Cultural and Fossil Resources and Tribal Consultation Group, the Cultural and Paleontological Resources and Tribal Consultation Division or simply Cultural Resources or Cultural or any of its iterations from 1999 to present.  Any reference to WO 240 includes any of the subdivisions or groups under that organization, including, but not limited to, individuals located in Colorado and Montana and any employee, manager, or contractor from 1999 to present.

5.   WO 700: means an organizational unit (Assistant Director's Office/Group/Division) of the Washington, D.C. office of the U.S. Bureau of Land Management that has been called Human Capital Management, Human Resources Management or simply Human Resources ("HR") or any of its iterations from 1997 to present. Any reference to WO 700 includes any of the subdivisions or groups under that organization, including, but not limited to, those located in Denver, Colorado, and Phoenix, Arizona and any employee, manager, or contractor from 1999 to present.

6.   Person: means a natural person or any business, corporation, legal entity, government entity, or association.

7.   Employee: means any person assigned to perform some duty or produce a product on behalf of any Defendant between

1997 and the present, whether paid or unpaid, including interns, clerks, administrators, managers, staff, contractors, rehired annuitants, volunteers and students.

8.  <u>Document</u> or <u>Record</u>: means any written or otherwise recorded graphic matter of any type or nature and any electronically stored information as defined in Rule 34(a) of the Federal Rules of Civil Procedure.  Accordingly, the terms include any: written, printed, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any type or nature however produced or reproduced, whether sent or received, copied, blind copied or forwarded including all attachments, in final or draft form including, but not limited to, all records, memoranda, emails, reports, financial statements, business records, handwritten and other notes, transcripts, papers, letters, envelopes, faxes, telegrams, cables, telex messages, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, diaries, calendars (electronic or hard copy) lists, log books, compar-isons, surveys, charts, graphs, books, pamphlets, articles, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, regulations, minutes, or transcriptions of notations, meetings or telephone conversations or other

communications of any type, photographs, microfilms, tapes, discs, travel drives, data cells, drums, computer programs and printouts, video-recordings or other data compilations from which information can be obtained.

9.  <u>Communication</u> or <u>Correspondence</u>: means transmittal of information by any manner or means.

10.  <u>Concerning</u>: means regarding, relating to, referring to, describing, evidencing, or constituting.

11.  The present tense includes the past and future tenses. Words in the singular and plural tenses are interchangeable; the masculine, feminine, and neuter forms are interchangeable.  The terms "all" and "any" mean "any and all"; "and" and "or" encompass both "and" and "or."   The words "include" and "including" means "including, but not limited to."

## **<u>Interrogatories</u>**

1.  State the full name; sex; race; national origin; prior EEO activity (if any); job title, series, and grade; last known work and home addresses; and last known telephone number of every person believed to have knowledge of any issue raised in Plaintiff's Complaint along with a summary of the knowledge they are believed to possess and their involvement in assessing and

denying the (1) accretion-of-duties promotion of Plaintiff's WO-240 National Curator position to the GS-14 level [hereinafter "audit/reclassification"] and (2) Plaintiff's application for the Group Manager position advertised in Vacancy Announcement No. WO-04-12 [hereinafter "non-selection"].  Your response must include a detailed explanation of the role Tom Dyer, Mary Trautner, Geoff Middaugh, Ed Shepard, Ranita Ellis, George C. Scott, Marilyn Nickels, Bob Abbey, Mary Smelcer, Linda Behlin, Connie Stewart, Bob Renton, Henri Bisson, Elena Daly, Aaron Horton, Louise Harris and Marilyn Johnson played in the audit/reclassification or non-selection.

   2.   State the full name; sex; race; national origin; prior EEO activity (if any); job title, series, and grade; last known work and home addresses; and last known telephone number of every person believed to have knowledge of any issue raised in Plaintiff's Complaint, including Carolyn McClellan, Marilyn Nickels, Ed Shepard, Bob Abbey, Mike Pool, Tom Dyer, Mary Trautner, Bob Renton, Louise Harris, Selma Sierra, Jim Hughes, Tracey Ware, Terry Pierce, Michelle Stroman, Larry Benna, Jesse Hicks, Dahlena Johnson, Richard Trinidad and Marilyn Johnson, along with a summary of the knowledge they are believed to possess and their involvement in the alteration and recoding of

9

Plaintiff's official time and attendance records in 2004 through 2005; the Letters of Counseling issued to Plaintiff, any AWOL and/or EPAP issues; and her attempts to informally/administratively resolve issues with Agency management and Office of Inspector General ("OIG") from 2000 through 2006.

3.   For each year from 2000 through 2005, list the name; gender; race; national origin; prior EEO activity (if any), position title; position series; grade level; duty station; and organizational code (i.e., WO-240, WO-800, or WO-730) of all Bureau Washington Office ("WO") employees who occupied GS-14 and GS-15 level positions.

4.   State the full name; gender; race; national origin; prior EEO activity (if any); position title; position series; grade level; duty station; last known work and home addresses; and last known telephone number(s) for current and/or former WO-240 employees Richard Brook, Robin Burgess, Jerry Cordova, John Douglas, Megg Heath, Mike O'Neill, and Kate Winthrop; and current or former WO-700 employees Linda Behlin, Louise Harris, Bob Renton, Jesse Hicks, Dahlena Johnson, Marilyn Johnson, Terry Pierce (aka. Johnston), Concetta Stewart, Michelle Stroman, Prentice Tart, and Tracy Nanette Ware.

5.   List and describe any promotions, including promotions to vacant positions and/or promotions involving accretion of duty, Tom Dyer, Mary Trautner, Geoff Middaugh, Ed Shepard, Carolyn McClellan, Ranita Ellis, George C. Scott, Marilyn Johnson and Marilyn Nickels were involved in or responsible for since 2000.  Your response must include a detailed explanation of the role each individual played in each promotion vacancy or position audit; and the name, sex, race, national origin, and prior EEO activity (if any), of the candidates, selectees or position occupants involved.

6.   Describe the date, place, and substance of any communication or correspondence Marilyn Johnson and/or Bob Renton exchanged with any other employee, other than privileged communications with Defendant's attorneys, concerning the audit/ reclassification of Plaintiff's National Curator position; the Group Manager position advertised in Vacancy Announcement No. WO-04-12 or selection process for that position; the alteration and recoding of Plaintiff's official time and attendance records; Plaintiff's Letter of Counseling, the AWOL and EPAP issues; or Plaintiffs attempts to informally or administratively resolve issues with Agency management and OIG from 2000 until 2006.  Your response must include a list of all communication

or correspondence that Marilyn Johnson and/or Bob Renton exchanged with Jim Hughes, Marilyn Nickels, Richard Trinidad, Dahlena Johnson, Selma Sierra, Tracey Ware, Terry Pierce, Louise Harris, Ranita Ellis, Bob Abbey, Linda Behlin, Connie Stewart, Ed Shepard, Tom Dyer, Carolyn McClellan and/or Mary Trautner concerning the afore-mentioned matters.   Your response must also list and describe in detail any recommendations Marilyn Johnson made or actions she took based on any communication and/or correspondence identified herein.

7.   Describe the date, place, and substance of any communication or correspondence that any of the individuals identified in your answer to Interrogatory Nos.: 1 and 2, exchanged with any other employee, other than privileged communications with Defendant's attorneys, concerning Plaintiff's audit/reclassification; Plaintiff's non-selection, including any communication concerning her application and/or qualifications for the position advertised in the Vacancy Announcement; or Plaintiff's EEO activities or opposition to discrimination at the Agency.

8.   Describe in detail the process and procedures used to assess, evaluate, audit and deny Plaintiff an accretion-of-duties promotion to the GS-14 level.  Your response must include a list of all the measures and criteria used to evaluate the

position's classification level; an explanation of why the position was not reclassified to the GS-14 level; and a detailed description of who was involved in making decisions concerning the classification level of Plaintiff's position and the scope of each such individual's involvement in the decision-making processes.

9. Describe in detail the procedure (s) used to process applications and evaluate candidates for the Group Manager position, advertised in Vacancy Announcement No. WO-04-12. Your answer must include a list of all the measures and criteria used to assess the candidates' qualifications during each phase of the selection process; the initial ranking of the applications; the first interview with Tom Dyer and/or Mary Trautner; the second ranking of the top six applicants; the checking of references; the final selection by the selecting official, Ed Shepard; a list of people involved in developing selection criteria applicable to the evaluation or selection referred to herein; the scope of each such individual's involvement in the above-referenced decision-making process; and a list of any and all references who were contacted during the selection process on behalf of any applicant or candidate.

10. State each and every reason why Defendant did not

select Plaintiff for the Group Manager position and/or why the ranking/interviewing officials (Tom Dyer and Mary Trautner) did not pass Plaintiff's name onto the selecting official for consideration.  Your response must identify the individuals responsible for making these decisions and list each factor they considered in evaluating Plaintiff's application and interview.

11.  State whether the criteria factors including KSAs, used to justify Plaintiff's non-selection as referenced in your answer to Interrogatory No.: 9, or otherwise, differ in any way from the evaluation criteria applied to any other candidate, as referenced in your answer to Interrogatory No.: 9 or otherwise contained in Vacancy Announcement No. W-04-12.  Your answer must include an affirmative statement indicating whether the ranking/interviewing officials used any additional evaluation criteria when evaluating Plaintiff for the position, and if so why.

12.  State each and every reason why Defendant selected Carolyn McClellan for the Group Manager position referenced in your answer to Interrogatory No.: 11, and each and every reason why the ranking/interviewing officials determined Ms. McClellan to be more qualified for the position than Plaintiff.  Your response must identify the individuals responsible for making

14

the afore-mentioned decisions list each factor the afore-mentioned person (s) considered in evaluating Ms. McClellan's application and interview and the involvement or role each such person played in making the decision to award Ms. McClellan the afore-mentioned position.

13.  List and describe any and all counseling, disciplinary actions, or leave alterations proposed or taken by Marilyn Nickels or Carolyn McClellan against any WO-240 employee from 2000 through 2005, including any such actions taken against Plaintiff.

14.  State Defendant's and WO-240 written policies and procedures from 2000 through 2005, concerning communication between supervisors and subordinates within the chain of command.  Your answer must include any and all standard operating procedures, and prohibitions concerning such communication, and list and describe fully any exceptions to that policy.

15.  List and describe fully Defendant's and WO-240 written policies and procedures from 2000 through 2005, concerning the use of leave by employees.  Your answer must include any and all policies and procedures concerning the type of information an employee must present to a supervisor to obtain approval for

sick leave and any time limits or constraints an employee must satisfy when making such submission (s).

16. List any formal or informal complaints (civil or criminal), grievances, counselings, or disciplinary actions of any kind whatsoever involving Carolyn McClellan, Marilyn Nickels, Marilyn Johnson, Tom Dyer, Mary Trautner, or Ed Shepard since 1990. Your answer must include the name of the complainant, the nature of the complaint, and the disposition or resolution of the complaint. Your response must also include any EEO Complaints that identified the afore-mentioned individuals as a complainant, an offending official, or a witness.

17. List any formal or informal EEO complaints of any kind whatsoever involving any WO employee since 2000; stating the name of the complainant, the nature and basis of the complaint (i.e., non-selection based on race), and the disposition or resolution of the complaint.

18. If Defendant believes Plaintiff was not subjected to discrimination, disparate treatment, or a hostile work environment, state any and all facts and reasons Defendant relies on to support that conclusion.

19. State the name, address, telephone number, field of

16

specialization, qualifications, years of experience, and amount of remuneration for any expert Defendant retained to assess any aspect of Plaintiff's Complaint and/or intends to call as a witness at Plaintiff's trial.

20. For any response to Plaintiff's Requests for Admissions that Defendant denies or indicates a lack of sufficient information to admit or deny, state in your answer to the instant Interrogatory the reason for the denial and/or identify and describe the information Defendant lacks to admit or deny the request.

## Request for Admissions

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, please state whether Defendant admits, denies, or is without sufficient information to admit or deny each of the following Requests for Admission:

1. Admit that Plaintiff Stephanie Damadio is Hispanic.

2. Admit that Plaintiff Stephanie Damadio is female.

3. Admit that Plaintiff Stephanie Damadio is currently employed by the California office of the Agency.

4. Admit that Tom Dyer is a White male.

5. Admit that Ed Shepard is a White male.

17

6.  Admit that Mary Trautner is a Native American female.

7.  Admit that Carolyn McClellan is a Native American female.

8.  Admit that Carolyn McClellan is a member of the Cherokee tribe.

9.  Admit that Marilyn Nickels is a White female.

10.  Admit that Marilyn Johnson is a Black female.

11.  Admit that Bob Renton is a White male.

12.  Admit that Richard Brook is a White male.

13.  Admit that John Douglas is a White male.

14.  Admit that Marilyn Nickels was Dr. Damadio's first-line supervisor from 1994 through 2004.

15.  Admit that from 1994 through 2004, Dr. Damadio was the only Hispanic under Marilyn Nickels' supervision.

16.  Admit that Marilyn Nickels was Richard Brook's first-line supervisor from 1999 through 2004.

17.  Admit that Stephanie Damadio and Richard Brook had comparable job responsibilities from 1999 through 2005.

18.  Admit that Marilyn Nickels was John Douglas' first-line supervisor from 1999 through 2003.

19.  Admit that Stephanie Damadio and John Douglas had comparable job responsibilities from 1999 through 2003.

18

20.  Admit that Richard Brook, John Douglas, and Stephanie Damadio each occupied program lead positions under the supervision of Marilyn Nickels from 1999 through 2003.

21.  Admit that from 1999 through 2003, Dr. Damadio sent emails to Marilyn Nickels during which she (Dr. Damadio) requested that her WO-240 National Curator position be reclassified to the GS-14 level due to accretion of duties.

22.  Admit that Marilyn Nickels told Dr. Damadio that Nickels had requested reclassification of her position to a GS-14 level.

23.  Admit that the October 16, 2005, transfer of Dr. Damadio to the California office of the Defendant was initiated by Ed Shepard contacting Mike Poole.

24.  Admit that Marilyn Nickels told Dr. Damadio that she (Nickels) did "not know how to fill out the justification form."

25.  Admit that Marilyn Nickels did not dispute Dr. Damadio's contention that her National Curator duties had grown substantially.

26.  Admit that from 1999 through March 5, 2003, Marilyn Nickels did not request or initiate a formal reclassification audit of Dr. Damadio's National Curator position.

27.  Admit that Marilyn Nickels took no action from 1999

through March 5, 2003, to secure an accretion-of-duties promotion to GS-14 for Dr. Damadio.

28.  Admit that Ranita Ellis did an informal assessment of Dr. Damadio's National Curator position.

29.  Admit that Ranita Ellis exchanged communications with Marilyn Johnson concerning her assessment of Dr. Damadio's National Curator position.

30.  Admit that Ranita Ellis communicated with Marilyn Nickels about her assessment of Dr. Damadio's National Curator position.

31.  Admit that Ranita Ellis's assessment of Dr. Damadio's National Curator position was not a formal reclassification audit.

32.  Admit that Marilyn Nickels initiated a reclassification audit of Richard Brook's position.

33.  Admit that Marilyn Nickels supported the reclass-ification of Richard Brook's position to the GS-14 level.

34.  Admit that Richard Brook's position was reclassified to the GS-14 level.

35.  Admit that Marilyn Nickels initiated a reclassification audit of John Douglas' position.

36.  Admit that Marilyn Nickels supported the reclass-

20

ification of John Douglas' position to the GS-14 level.

37.  Admit that John Douglas' position was reclassified to the GS-14 level.

38.  Admit that Dr. Damadio asked Marilyn Nickels if she (Damadio) could obtain a temporary promotion to the GS-14 level while her reclassification was in process.

39.  Admit that Marilyn Nickels told Dr. Damadio that she could not obtain a temporary promotion to the GS-14 level, while Dr. Damadio's reclassification was in process.

40.  Admit that Richard Brook was given a temporary promotion to the GS-14 level while his reclassification was in process.

41.  Admit that Bob Abbey requested a formal reclassification audit of Dr. Damadio's National Curator position.

42.  Admit that on September 20, 2002, Bob Abbey's request for the reclassification of Dr. Damadio's National Curator position was submitted to the Bureau's Washington, D.C. HR Office for consideration.

43.  Admit that in a document dated September 20, 2002, Assistant Director for WO 200, Bob Abbey, formally requested Human Resources to reclassify Damadio's position noting that:

21

"[t]he proper classification of this position is long over
due as the incumbent has been performing the higher level
duties for well over three years.  Not only will this
action properly classify the duties of this position, but
will also put the incumbent in line with her peers."

44.  Admit that the request for a reclassification audit of
Dr. Damadio's National Curator position was withdrawn by Mary
Smelcer on December 13, 2002.

45.  Admit that prior to December 13, 2002, no action had
been taken to conduct the reclassification audit of Dr.
Damadio's National Curator position.

46.  Admit that in 1999, Ms. Damadio was eligible for
promotion to the GS-14 level.

47.  Admit that no action was taken to conduct the
reclassification audit of Dr. Damadio's National Curator
position from December 13, 2002, through the date on which Dr.
Damadio filed her first EEO complaint.

48.  Admit that Marilyn Nickels sent Dr. Damadio an email
on March 6, 2003, in which Ms. Nickels stated that she had
received directions concerning a reclassification audit of Dr.
Damadio's position from Marilyn Johnson on the preceding day.

49.  Admit that the on March 6, 2003, Marilyn Nickels

22

requested a formal reclassification audit of Dr. Damadio's National Curator position.

50. Admit that Marilyn Nickels' March 6, 2003 audit request package was identical in substance to the audit request package Bob Abbey had previously submitted on September 20, 2002.

51. Admit that George C. Scott conducted an audit of Ms. Damadio's National Curator position to determine the proper GS classification level.

52. Admit that Marilyn Nickels did not actively support the promotion of Dr. Damadio to GS-14 as she did with comparable white male employees, Richard Brook and John Douglas.

53. Admit that the reclassification audit George C. Scott conducted was based on incorrect position classification standards.

54. Admit that during the reclassification audit of Ms. Damadio's National Curator position George C. Scott used the position classification standards for Historian positions.

55. Admit that during the reclassification audit of Ms. Damadio's National Curator position George C. Scott did not use the position classification standards for Museum Curator positions.

23

56.  Admit that George C. Scott communicated with Marilyn Johnson either before or during his audit of Ms. Damadio's National Curator position concerning the afore-mentioned audit.

57.  Admit that George C. Scott communicated with Marilyn Nickels either before or during his audit of Ms. Damadio's National Curator position.

58.  Admit that George C. Scott's April 16, 2003 Position Evaluation Statement concluded that Ms. Damadio's National Curator position should be classified at the GS-13 level.

59.  Admit that Dr. Damadio applied for the Group Manager position advertised in Vacancy Announcement No. WO-04-12 (hereinafter "Vacancy").

60.  Admit that Dr. Damadio application for the Vacancy was timely.

61.  Admit that Dr. Damadio application for the Vacancy was complete.

62.  Admit that Carolyn McClellan applied for the Vacancy.

63.  Admit that Plaintiff interviewed with Tom Dyer and Mary Trautner for the Vacancy.

64.  Admit that Carolyn McClellan interviewed with Tom Dyer and Mary Trautner for the Vacancy.

65.  Admit that Tom Dyer and Mary Trautner used criteria

24

beyond or in addition to those stated in the Vacancy Announcement to select the candidates to be referred to the selecting official, Ed Shepard.

66. Admit that Carolyn McClellan's application package included a certification that she was a Native American individual, affiliated with the Cherokee tribe.

67. Admit that Tom Dyer and Mary Trautner used criteria that were not stated in the Vacancy Announcement to select the candidates to be referred to the selecting official, Ed Shepard.

68. Admit that Dr. Damadio met all the minimal criteria for the position as advertised in the Vacancy Announcement.

69. Admit that Ms. Damadio was assigned to W-240 until October 15, 2005.

70. Admit that beginning in 1999, Ms. Nickels was told that Ms. Damadio was interested in obtaining a promotion to a GS-14 position.

71. Admit that a current Performance Appraisal was required as part of application for the Vacancy.

72. Admit that Dr. Damadio provided technical supervision to over 180 BLM employees nationwide on a permanent basis for the Bureau over a period of approximately 10 years.

73. Admit that Dr. Damadio's duties as National Curator

included creating and administering the Bureau's Museum Partnership Program, which developed, reviewed, and approved scientific projects for the allocation of grants.

74. Admit that in 2004, Ms. McClellan had only been in professional government service for approximately 5 years.

75. Admit that planning and organizing the work of an organization and directing the work of subordinates is one of the core responsibilities of the position of Group Manager, GS-0301-14/15, as set forth in the Vacancy Announcement.

76. Admit that leading, coordinating, and developing the policies of cultural and fossil resources and tribal consultation programs is a core responsibility of the position of Group Manager, GS-0301-14/15, as set forth in the Vacancy Announcement.

77. Admit that as of 2004, Dr. Damadio had authored almost all national policy regarding NAGPRA and Museum Collections.

78. Admit that Dr. Damadio served as an advisor to the National Indian Justice Center.

79. Admit that Dr. Damadio authored the Bureau's comments on the regulations of the Native American Graves Protection and Repatriation Act and the Indian Self-Determination Act which governed negotiated rule-making with tribes.

80. Admit that having demonstrable ability and knowledge in leading, coordinating and performing analyses and evaluations of cultural, fossil and tribal consultation programs is a core responsibility of the position of Group Manager, GS-0301-14/15, as set forth in the Vacancy Announcement.

81. Admit that the core requirement reference in Request for No. 80, requires that the applicant have specific knowledge of the programs being administered by the Group Manager position, including archaeology, paleontology, history, historic preservation, Native American issues, physical and cultural anthropology, NAGPRA, heritage education, public outreach, all aspects of museum sciences and extensive familiarity with relevant regulations and Bureau policy.

82. Admit that the application materials submitted by Dr. Damadio show that she fully possesses the specific knowledge required by the core requirement referenced in Request for Admission No. 80.

83. Admit that Ms. McClellan's resume reveals no archaeology, historic preservation, history, heritage education or paleontology experience and does not evidence extensive knowledge of applicable authorities.

84. Admit that Ms. McClellan's resume shows very limited

27

relevant experience in any area relevant to the core requirement reference in Request for Admission No. 80.

85. Admit that actively promoting cooperation, teamwork, attaining objectives, making decisions, and exercising initiative on highly visible programs are all core responsibilities of Group Manager, GS-0301-14/15, as set forth in the Vacancy Announcement.

86. Admit that on October 17, 2004, Ms. McClellan was officially transferred out of the Bureau of Indian Affairs and into Dr. Damadio's division.

87. Admit that on October 17, 2004, Ms. McClellan became Dr. Damadio's supervisor.

88. Admit that a female subordinate had filed an EEO Complaint against Ms. McClellan alleging that Ms. McClellan had discriminated against her during Ms. McClellan's prior federal employment.

89. Admit that Ms. McClellan permitted WO 240 staff members to be absent from work for periods lasting as long as a week after such staff members had called to request leave over the telephone, and had not submitted any written leave slips.

90. Admit that Ms. McClellan required Dr. Damadio to submit written leave slips for all absences from work, including

those that lasted only an hour.

91.  Admit that Dr. Damadio had never been counseled about her leave usage or attendance before Ms. McClellan became her supervisor.

92.  Admit that the interview panel for the vacancy stated that the reason they recommended Ms. McClellan for the position of Group Manager, GS-0301-14/15, to the deciding official rather than Dr. Damadio, was because the vacancy was seeking a manager, rather than a technical expert.

93.  Admit that the interview panel for the vacancy recommended only three applicants to the deciding official.

94.  Admit that Ms. Shepard made the final selection out of the three applicants who were recommended by the interview panel.

95.  Admit that Dr. Damadio was the only Hispanic Female in group (WO-240) supervised by Dr. Nickels from 1999 through 2004.

96.  Admit that all the employees who were hired into or promoted into GS-14 positions in the WO-240 Group from 1999 through 2004 were non-Hispanic employees.

97.  Admit that Dr. Damadio was the only GS-13 employee under Dr. Nickels' supervision, that Dr. Nickels did not promote to the GS-14 level.

98.  Admit  that  BLM  Human  Resource  records  show  that
Marilyn  Nickels  hired  BLM  WO-240  Program  Leads  Jerry  Cordova,
Robin  Burgess  and  Mike  O'Neill  at  the  GS-14  grade  level.

99.  Admit  that  all  documents  produced  by  the  Defendant  in
response  to  Plaintiff's  Requests  for  Production  of  Documents  are
authentic.

Respectfully submitted,


_____/s/_____
CHARLES W. DAY, JR.
    (D.C. Bar No. 459820)
MYRREL C. HENDRICKS, JR.
    (D.C. BAR No. 291781)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

September 27, 2007            Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Plaintiffs'
First Set of Interrogatories was served this 27th day of
September, 2007, via first class U.S. mail and facsimile, upon
counsel for Defendant as follows:

>Mercedeh Momeni, Esq.
>Assistant United States Attorney
>Judiciary Center Building, Tenth Floor
>555 Fourth Street, N.W.
>Washington, DC 20530
>Facsimile: 202-514-8780

>_____/s/_____
>MYRREL C. HENDRICKS, JR.

31